## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

SAUL HOLDINGS LIMITED
PARTNERSHIP,

      Plaintiff,

v.

      Civil Action No. TDC-14-1444

SERACARE LIFE SCIENCES, INC.,

      Defendant.

### MEMORANDUM OPINION

Plaintiff Saul Holdings Limited Partnership ("Saul") initiated this action against Defendant SeraCare Life Sciences, Inc. ("SeraCare") seeking a declaratory judgment that SeraCare failed to execute timely the early termination provision of a commercial lease (the "Lease"). Presently pending are SeraCare's Motion for Judgment on the Pleadings, ECF No. 16, and Saul's Motion for Judgment on Complaint for Declaratory Judgment, ECF No. 17. The Court heard oral argument on the motions on November 19, 2014. For the reasons set forth below, Saul's Motion is granted in part to the extent that the Court finds that the termination date was October 31, 2014, but is denied in part to the extent that it seeks a ruling that SeraCare is required to fulfill its obligations under the Lease. SeraCare's Motion is denied.

### BACKGROUND

Unless otherwise noted, the following facts are presented as alleged in the Complaint for Declaratory Relief. ECF No. 2. Saul is a limited partnership that leases commercial properties. On May 16, 1997, Saul and BBI-Biotech Research Laboratories, Inc. entered into the Lease for the property located at 217 Perry Parkway, Suite 1, in Gaithersburg, Maryland, for a period of

ten years. The lessee's rights were later assigned to SeraCare, which occupied the premises. On

June 14, 2007, Saul and SeraCare amended the Lease (the "Third Amendment") to extend it for

120 months, beginning on November 1, 2007 (the "Renewal Date"), and ending on October 31,

2017. Compl. Declaratory Relief Ex. 1, at 1, ECF No. 2-2. The Third Amendment also gave

SeraCare the option to terminate the Lease early:

> Tenant shall have the right to terminate this Lease *on the last day of the eighty-fourth (84th) month after the Renewal Date* by giving Landlord two hundred (270) days advanced written notice of its intention to terminate this Lease.

*Id.* at 2, ¶ 3 (emphasis added).

In addition to requiring written notice by a specified date, the early termination provision

required SeraCare to pay a $277,300 termination fee and noted that time was of the essence:

> In the event Tenant shall fail to give written notice to the Landlord of its election to so terminate this Lease . . . and/or pay the Termination Fee, *time being of the essence*, then Tenant shall no longer have the right to terminate this Lease and the provisions of [this section] shall be void and of no further force and effect.

*Id.* (emphasis added).

On February 24, 2014, SeraCare sent Saul the $277,300 termination fee with written

notice of its intention to terminate the Lease early. *See* Compl. Declaratory Relief Ex. 2, at 1,

ECF No. 2-3. Saul received the notice and termination fee the following day. Answer &

Countercl., at 7 ¶ 14, ECF No. 6. On March 12, 2014, however, Saul notified SeraCare by

voicemail that SeraCare had not timely terminated the Lease and that the Lease was "in full

force." *Id.* at 7, ¶ 15. According to Saul, SeraCare was required to provide notice of termination

by February 3, 2014, which is 270 days before October 31, 2014, the date Saul contends would

be the early termination date under the Third Amendment. Compl. ¶¶ 9–11. On March 12,

2014, Saul returned the notice and termination fee with an accompanying letter stating that

SeraCare had "missed the deadline for terminating the Lease." Answer & Countercl. Ex. B, ECF

No. 6-2. On March 25, 2014, SeraCare responded with a letter of its own, disagreeing with the view that it had missed the deadline for termination and reiterating its position that the early termination date would be November 30, 2014. Answer & Countercl. Ex. C, ECF No. 6-3.

On March 21, 2014, Saul filed suit against SeraCare in the Circuit Court for Montgomery County, Maryland, requesting that the court enter a judgment declaring that SeraCare failed to execute timely the early termination provision. Notice of Removal ¶ 1, ECF No. 1. After SeraCare removed the action to this Court on April 30, 2014, *see* ECF No. 1, SeraCare filed a counterclaim seeking judgment in its favor, *see* ECF No. 6. On June 3, 2014, the parties filed competing motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), ECF Nos. 16, 17.

## DISCUSSION

### I.     Legal Standard

The parties are both seeking a declaratory judgment, as authorized by the Declaratory Judgment Act, 28 U.S.C. § 2201 (2012). The Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." § 2201(a). Here, the parties each seek a declaratory judgment resolving whether SeraCare timely executed the early termination provision of the Lease and have moved for judgment on the pleadings to that effect.

Rule 12(c) provides that "a party may move for judgment on the pleadings" after the pleadings have been filed. Fed. R. Civ. P. 12(c). The Court considers the pleadings alone, which consist of the complaint, the answer, and any written instruments attached as exhibits. *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). The standard in resolving such a motion,

however, depends on the type of relief sought. *Geoghegan v. Grant*, No. DKC-10-1137, 2011 WL 673779, at \*3 (D. Md. Feb. 17, 2011); 5C Charles Alan Wright et al., *Federal Practice & Procedure* § 1369 (3d ed. 2014). Ordinarily, when the moving party seeks to address a procedural defect or otherwise does not pursue a determination on the merits of the claim, a court reviewing a motion for judgment on the pleadings employs the same standard as a motion to dismiss under Rule 12(b)(6). *Butler v. United States*, 702 F.3d 749, 751–52 (4th Cir. 2012). Where, as here, the parties are concerned with reaching a final judgment on the merits, courts apply the summary judgment standard under Rule 56. *Geoghegan*, 2011 WL 673779, at \*3; Wright, *supra*, § 1369.

Under that standard, the Court must grant judgment if the moving party demonstrates there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). In doing so, the Court views the facts in a light most favorable to the nonmoving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), who has the burden of showing a genuine dispute exists, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Notably, a motion for judgment on the pleadings can be used to obtain a declaratory judgment where the only dispute is the proper interpretation of contractual terms. *See Hous. Auth. Risk Retention Grp., Inc. v. Chi. Hous. Auth.*, 378 F.3d 596, 598 (7th Cir. 2004); *A. S. Abell Co. v. Balt. Typographical Union No. 12*, 338 F.2d 190, 193–95 (4th Cir. 1964). Because this Court sits in diversity jurisdiction, the Court relies on state law, in this case Maryland law, to resolve the pending issues. *Horace Mann Ins. Co. v. Gen. Star Nat'l Ins. Co.*, 514 F.3d 327, 329 (4th Cir. 2008).

## II.    The Early Termination Provision

This dispute centers on the interpretation of the early termination provision, namely, on when SeraCare was required to provide notice of its intention to terminate. The provision is as follows:

> Tenant shall have the right to terminate this Lease *on the last day of the eighty-fourth (84th) month after the Renewal Date* by giving Landlord two hundred (270) days advanced written notice of its intention to terminate this Lease.

Compl. Declaratory Relief Ex. 1, at 2, ¶ 3 (emphasis added).

The parties agree that the Renewal Date referenced in this provision is November 1, 2007. Counting November 2007 as a "month," Saul calculates that the last day of the 84th month after the Renewal Date is October 31, 2014, and therefore argues that SeraCare was required to provide notice of termination by February 3, 2014 (270 days before October 31, 2014). Emphasizing the phrase "after the Renewal Date," SeraCare declines to count November 2007 as a month because it did not fall entirely "after" that date. SeraCare therefore counts December 2007 as the first month after the Renewal Date, calculates the 84th month to be November 2014, and concludes that the termination date would be November 30, 2014. SeraCare thus argues that it was required to notify Saul of its intent to terminate the Lease by March 5, 2014 (270 days before November 30, 2014) and had timely done so when it notified Saul on February 24, 2014.

In Maryland, courts follow "the law of objective contract interpretation, which provides that the written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite understanding." *Dumbarton Improvement Ass'n v. Druid Ridge Cemetery Co.*, 73 A.3d 224, 232 (Md. 2013)

(internal quotation marks and citations omitted). In interpreting such language, "the court will give effect to its plain, ordinary, and usual meaning, taking into account the context in which it is used." *Sy-Lene of Wash., Inc. v. Starwood Urban Retail II, LLC*, 829 A.2d 540, 546 (Md. 2003). The court's role "is not to discern the actual mindset of the parties at the time of the agreement, but rather, to determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated." *Dumbarton Improvement Ass'n*, 73 A.3d at 232 (quoting *General Motors Acceptance v. Daniels*, 492 A.2d 1306, 1310 (1985)) (internal quotation marks omitted). In determining the contract's true meaning, "the contract must be construed in its entirety and, if reasonably possible, effect must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed." *Id.* at 232–33 (quoting *Sagner v. Glenangus Farms, Inc.*, 198 A.2d 277, 283 (1964)) (internal quotation marks omitted).

### A.     The Language of the Early Termination Provision

Turning to the early termination provision, the language "the 84th month after the Renewal Date" does not itself clearly describe how to use the Renewal Date as a reference point in calculating time. If, as Saul argues, November 2007 is deemed to be the first month after the Renewal Date of November 1, 2007, the last day of the 84th month after that date would be October 31, 2014. If, as SeraCare asserts, November 2007 does not count because it does not entirely fall "after" the Renewal Date, then the first month would be December 2007, and the last day of the 84th month after the Renewal Date would be November 30, 2014.

The cases offered by the parties, which involve contracts or statutory provisions with different language, usually from other jurisdictions, is of limited value to the analysis. For

example, Saul relies on *Commissioner of Transportation v. Kahn*, 811 A.2d 693 (Conn. 2003), for the proposition that the "period of time of one calendar month, if the first day of that period is the first day of the calendar month, would terminate at the end of the last day of that calendar month rather than at the end of the first day of the next succeeding calendar month." *Id.* at 698. In that instance, the Supreme Court of Connecticut was interpreting Connecticut statutory provisions that are not at issue in this case. Saul also relies on a Maryland case for the proposition that "a calendar month runs from the first moment of a given day in month X and expires at midnight of the day before the same numerical day in month Y," but that case dealt with the interpretation of the statutory time period within which to file suit against an executor and is not necessarily applicable to the terms used in this private lease. *Yingling v. Smith*, 269 A.2d 612, 613–14 (Md. 1970). In any event, because the term "calendar month" does not appear in the early termination provision, the definition in *Yingling* is of limited value to the scenario at issue here.

For its part, SeraCare relies on an unpublished district court case, *Raffel v. Medallion Kitchens of Minnesota, Inc.*, No. 95 C 5374, 1996 WL 675787 (N.D. Ill. Nov. 20, 1996), *aff'd*, 139 F.3d 1142 (7th Cir. 1998), with language similar to the phrasing of the early termination provision. In *Raffel*, the court concluded that, where an Illinois lease provision provided that the lease terminated "on the last day of the month that is sixty months after the commencement date," the lease actually ended after sixty-one months, because the commencement date was January 1, 1990, and that first month of January 1990 was not counted because it did not fall entirely after the commencement date. *Id.* at *1. Although this analysis of similar language gives credence to SeraCare's interpretation, the present case differs in that the remainder of the contract provides strong evidence to indicate that the month including the Renewal Date,

November 2007, should be counted. *See infra* part II. B. *Raffel* is also distinguishable because in that instance, there was a clear understanding among the parties that the lease would terminate at the end of the 61st month. *Raffel,* 1996 WL 675787, at \*2.

In the end, neither interpretation is entirely satisfactory. Saul's view does not account for the fact that some part of the month of November, as much as a full day,[1] does not fall "after the Renewal Date." SeraCare's position assumes a rigid definition of "month" as a period of time consisting of only a full 30 or 31 day period that necessarily commences on the first day of a calendar month, where the language did not explicitly refer to "full months" or "calendar months," and that leads to the inexplicable result that virtually an entire month is skipped over in the calculation of the termination date. The Court declines to find that the provision can be accurately interpreted based on these words alone.

### B.      The Remaining Lease Terms

When the Lease is "construed in its entirety," *Dumbarton Improvement Ass'n*, 73 A.3d at 232–33, however, there are numerous indicators that the "the last day of the 84th month after the Renewal Date" is properly construed as October 31, 2014. First, the Third Amendment, which extends the Lease "for an additional period of one hundred twenty (120) months," defines the "Term" of the extension as the period from November 1, 2007 to October 31, 2017. *See* Compl. Declaratory Relief Ex. 1, at 1. Because the extension contemplates the first month as November 2007 and the 120th month as October 2017, it follows that, under this arrangement, the "84th month" of the "Term" is October 2014. Moreover, the fact that the 29 days of November following the Renewal Date were contemplated to count as the first month in the "Term"

---

[1] Because the Third Amendment does not provide a time of day when renewal occurred, it is possible to construe some or all of November 1 as falling "after the Renewal Date."

supports the conclusion that the parties intended that same period to count toward the 84-month calculation in the early termination provision.

Second, the "Base Rent" provision of the Third Amendment outlines ten separate year-long sub-terms during which SeraCare is expected to pay an increasing amount of rent, all of which end in October of their respective years. *See, e.g.*, *id.* at 1 ("Tenant shall pay Base Rent . . . for the period commencing on November 1, 2007 and ending on October 31, 2008."). When read together, the "Term" and "Base Rent" provisions establish a convention that term-ending events occur on October 31. This squares with reading October 2014 as the "84th month" under the terms of the early termination provision and, more specifically, reading October 31, 2014, as "the last day of the 84th month after the Renewal Date." Significantly, although the terms and sub-terms in the "Term" and "Base Rent" provisions start on November 1, no provision in the Third Amendment contains a deadline that falls on November 30. *See id.* at 1–3.

Third, reading the termination date to be October 31, 2014 is also consistent with the mechanism for calculating time in the original Lease:

> The term of this Lease shall commence on the date hereof (the "Lease Date") and shall end one hundred twenty (120) months after the "Rent Commencement Date[.]" . . . In the event the Rent Commencement Date is a date other than the first day of a calendar month, the term of the Lease shall run . . . from the first day of the calendar month following the Rent Commencement Date.

*Id.* at 69. The second clause indicates that the remaining days of a month that immediately follow the start date are excluded from the calculation of a time period if the start date falls somewhere in the middle of the month but not when the start date falls on the first day of the month. Thus, the Lease contemplates that when an operative date is designated as the first day of a month, that calendar month counts as a full month for purposes of calculating a time period. This convention is consistent with Saul's interpretation of the early termination provision.

Relying on *Novella v. Westchester County*, 661 F.3d 128, 142 (2d Cir. 2011), SeraCare argues that these Lease and Third Amendment provisions contain different language from the early termination provision and, in the case of the Lease, were negotiated and adopted at a different time by different parties, and thus under the canon of *expressio unius est exclusion alterius* ("the expression of one thing implies the exclusion of another thing not mentioned"), the provisions should not be assumed to lead to the same result. Notably, however, the Renewal Term, Base Rent, and Lease Term provisions themselves use different language from each other, yet consistently lead to the same convention for the overall agreement – that significant events in the Lease commence on November 1 and end on October 31 of the following year, and that the remaining days following events occurring on the first day of November count as a month for calculation purposes. Thus, these provisions are significant not because one should assume that the different language in one provision necessarily applies to the early termination provision, but because they collectively establish a framework for the Lease that assists the Court in its task to "determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated." *Dumbarton Improvement Ass'n*, 73 A.3d at 232.

Here, it bears noting that October 31, 2014, represents the last day of the 84th month of the 120-month Lease Renewal Term, which is also the end of exactly two-thirds of the Renewal Term, and the last day of a period at a Base Rent of $791,116.96 before the Base Rent increased to $814,850.47. Compl. Declaratory Relief Ex. 1, at 1. November 2014 is the 85th month of the Lease Renewal Term under the Third Amendment. Under these circumstances, a reasonable person in the position of the parties would not have construed the language of the early termination provision as contemplating the Lease terminating after two-thirds of the renewal

period plus one month, with the last month being at a new rate of rent. The Court therefore finds that the termination date was October 31, 2014, and the notice of termination was due on February 3, 2014.

### III.   Equitable Relief

Because Maryland law requires strict compliance to execute an option, *see Elderkin v. Carroll*, 941 A.2d 1127, 1133 (Md. 2008), SeraCare failed to execute the early termination provision when it did not notify Saul by February 3, 2014. Maryland courts do not typically forgive a failure to comply with a notice deadline. When faced with a failure to adhere strictly to the terms for exercising an option, Maryland courts consider whether the term was a "condition," for which the failure to comply would be a "material breach," or a "covenant," for which failure to comply would be non-material. *See Elderkin*, 941 A.2d at 1135; *Beckenheimer's, Inc. v. Alameda Assocs. Ltd. P'ship*, 611 A.2d 105, 111 (Md. 1992) (finding that the failure to include a net worth statement with a timely notice of termination was a non-material covenant that did not bar a finding that the option was validly exercised); *see also NCO Fin. Sys., Inc. v. Montgomery Park, LLC*, No. GLR-11-1020, 2013 WL 6817629, at *11–12 (D. Md. Dec. 20, 2013) (finding that the failure to calculate the termination fee accurately was a breach of a non-material covenant that did not invalidate the timely exercise of an option to terminate).

In *Beckenheimer's*, the Court of Appeals of Maryland indicated that time is a material condition to execute an option, especially where, as here, the contract expressly notes that "time is of the essence." *See Beckenheimer's*, 611 A.2d at 111, 113; *see also Schlee v. Bryant*, 234 A.2d 457, 462 (Md. 1967) ("[T]he optionee must perform the condition within the time agreed upon, or else the option terminates."); Compl. Declaratory Relief Ex. 1, at 2, ¶ 3 (providing expressly that time is of the essence for terminating the Lease early). By specifically noting that

11

time is of the essence, and by providing that SeraCare "shall no longer have the right to terminate this Lease" if it "fail[s] to give written notice" timely, the early termination provision makes clear that time is a required condition to terminate.  Compl. Declaratory Relief Ex. 1, at 2, ¶3.

SeraCare, however, seeks equitable relief based on case law in which courts have declined to require strict compliance from tenants who missed the deadline to execute an option due to an honest mistake in calculating or interpreting the deadline.  *See, e.g.*, *Am. Houses, Inc. v. Schneider*, 211 F.2d 881, 885 (3d Cir. 1954); *Duncan v. G.E.W., Inc.*, 526 A.2d 1358, 1365 (D.C. 1987); *Benetti v. Kishner*, 558 P.2d 537, 539 (Nev. 1953); *Jones v. Gianerante*, 111 N.E.2d 419, 420 (N.Y. 1953).  This theory is founded in the court's power to grant relief where a balancing of the equities compels a more favorable result for the tenant.  *See Am. Houses, Inc.*, 211 F.2d at 883.

Significantly, SeraCare cites no Maryland case law providing equitable relief under this "honest mistake" rationale, and the Court has not identified any.  There are, however, indicia that Maryland law contemplates equitable relief for tenants in appropriate circumstances.  In *Chesapeake Bank of Maryland v. Monro Muffler/Brake, Inc.*, 891 A.2d 384 (Md. Ct. Spec. App. 2006), the Maryland Court of Special Appeals re-stated the general principle that "'[c]ourts of equity will relieve where the omission and subsequent forfeiture are the result of mistake or accident and the injury and inconvenience arising from it are capable of compensation.'"  *Id.* at 399 (quoting *Rose & Crown, Ltd. v. Shaw Enters. Inc.*, 346 A.2d 459, 465 (Md. 1976)); *see also id.* at 398 (indicating that Maryland courts may grant equitable relief where there is mistake or "the equities are such that [the contract] should not be enforced" (quoting *Gardiner v. Gardiner*, 88 A.2d 481, 484 (Md. 1952))).  In *Duncan*, the District of Columbia Court of Appeals interpreted Maryland law to permit "'equitable relief from a [tenant's] failure or delay in giving

notice to renew an option in its lease'" due to an honest mistake in interpreting the notice deadline. *Duncan*, 526 A.2d at 1362–63, 1364. There, the court permitted the tenant to renew a commercial lease despite giving notice 23 days late, where, among other reasons, the lessee's misinterpretation of the deadline was understandable given the complexity of the option language in the lease. *Id.* at 1359, 1361, 1364–65.

In *Chesapeake Bank*, the court limited the availability of equitable relief due to a mistake when it declined to grant such relief to a tenant who knew the correct notice deadline of 90 days before the end of the lease, but mistakenly set a calendar reminder to give notice 60 days before. *Id.* at 389, 399. The court held that such relief is not available when "a tenant failed to exercise an option due solely to the tenant's oversight." *Id.* at 399 ("[The tenant] simply failed to exercise its option, thus allowing the lease to expire. In such a case, the relative hardships are immaterial."). The court, however, did not address whether equitable relief could be granted when a notice deadline was mistakenly interpreted. Thus, although Maryland courts consider notice deadlines to be material conditions, and will not grant equitable relief due to oversight or neglect, this Court does not find an absolute bar in Maryland law to equitable relief based on an honest mistake in interpreting a deadline.

Courts that have granted such relief do so only upon finding that (1) there was an honest mistake in interpreting the correct notice deadline; (2) the delay in renewing was slight; (3) the delay did not prejudice the landlord; and (4) failure to grant relief would cause a tenant "unconscionable hardship." *Duncan*, 526 A.2d at 1364; *accord Am. Houses, Inc.*, 211 F.2d 883–84 (considering the delay in giving notice, the hardship to the tenant, and whether the landlord changed his position as a result of the delay). Given that Maryland courts have yet to apply this theory to grant equitable relief based on a mistaken interpretation of a deadline, the

circumstances would likely have to be particularly compelling to overcome the significance that Maryland law places on time in executing an option.

In this case, the termination provision, although reasonably clear upon consideration of the entire contract, was susceptible to an honest mistake in interpretation. The delay was slight in that SeraCare only missed the deadline by three weeks and still provided over eight months' notice instead of the contemplated nine months. Because this issue comes to the Court on motions for judgment on the pleadings, however, the record is devoid of any facts on whether there was, in fact, an honest mistake, and whether and to what extent there was any prejudice to Saul or hardship to SeraCare, that would allow this issue to be resolved at this stage. Accordingly, although Saul's Motion for Judgment on Complaint for Declaratory Judgment is granted to the extent that the Court finds that the termination date was October 31, 2014, it is denied to the extent that it seeks a ruling that SeraCare is required to fulfill its obligations under the Lease. The issue of whether SeraCare is entitled to equitable relief due to an honest mistake in interpreting the notice deadline remains to be resolved.

## CONCLUSION

For the foregoing reasons, and as stated in a separate Order, SeraCare's Motion for Judgment on the Pleadings, ECF No. 16, is DENIED. Saul's Motion for Judgment on Complaint for Declaratory Judgment, ECF No. 17, is GRANTED in part, to the extent that the Court finds that the termination date was October 31, 2014, and is DENIED in part to the extent that it seeks a ruling that SeraCare is required to fulfill its obligations under the Lease.

Date: November 25, 2014

THEODORE D. CHUANG
United States District Judge